UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                                                                                        :

ROSARIO VEGA, *on behalf of herself and all others similarly situated*,

                             Plaintiff,

          -v-                                 24 Civ. 2911 (JPC)

                                                 OPINION AND ORDER

REGENT HOSPITALITY LINEN SERVICES, LLC,

                             Defendant.
-----------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

        Plaintiff Rosario Vega ("Vega") brings this action against her former employer, Defendant Regent Hospitality Linen Services, LLC ("Regent"), alleging federal employment discrimination and state wage-and-hour claims. Vega alleges (1) a hostile work environment based on her sex at Regent in violation of Title VII of the Civil Rights Act of 1964 and the New York State Human Rights Law ("NYSHRL"), (2) a constructive discharge also in violation of Title VII and the NYSHRL, (3) Regent's failure to pay Vega and proposed class members wages on a weekly basis in violation of Section 191 of the New York Labor Law ("NYLL"), and (4) Regent's failure to furnish proper wage statements to Vega and proposed class members in violation of Section 195(3) of the NYLL. Regent moves for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) as to Vega's Title VII and NYSHRL claims, and moves to dismiss Vega's NYLL claims for lack of subject matter jurisdiction under Rule 12(b)(1) and 28 U.S.C. § 1367.

        For reasons that follow, the Court grants Regent's motion. The Court lacks supplemental jurisdiction over Vega's state wage-and-hour claims given the absence of a common nucleus of

operative fact with her federal claims, Vega's federal claims as pleaded fail to state a claim upon which relief may be granted, and the Court declines to exercise supplemental jurisdiction over her remaining NYSHRL claims. The Court, however, grants Vega leave to amend if she believes she can cure the pleading deficiencies identified herein.

## I. Background

### A. Facts[1]

Regent provides industrial laundry and linen services to businesses throughout the New York City area. Compl. ¶ 3. In mid-to-late 2021,[2] Vega began working for Regent as a general laborer in the towel department of the company's Bronx warehouse, alongside approximately 100 other employees. *Id.* ¶¶ 3, 17, 45. In this role, Vega unloaded dirty towels when they arrived at the warehouse, washed the towels, and folded and repacked clean towels to be returned to customers. *Id.* ¶ 17.

Vega alleges that, in March 2022, she began experiencing "daily acts of gender discrimination and hostility by her direct supervisor, Maurice." *Id.* ¶ 19. This conduct included "Maurice openly call[ing] [Vega] a 'b***h' on the shop floor"—a term he never directed at male employees—and Maurice "scream[ing] 'f**k you' at [Vega] when she stood up for herself." *Id.* ¶¶ 20-21. That same month, Vega approached Maurice's supervisor, Jeremy, to report this

---

[1] The following facts, which are assumed true for purposes of this Opinion and Order, are taken from Vega's Complaint, Dkt. 1 ("Compl."). *See Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000) ("When considering a motion to dismiss pursuant to Rule 12(b)(1), the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff."); *Ezra v. Bristol-Myers Squibb Co.*, 784 F. App'x 48, 50 (2d Cir. 2019) (explaining that when considering a motion for judgment on the pleadings under Rule 12(c), the court "accept[s] the complaint's factual allegations as true and draw[s] all reasonable inferences in the plaintiff's favor").

[2] The Complaint alleges two different months when Vega started working for Regent: March 2021, Compl. ¶ 3, and September 2021, *id.* ¶ 16.

behavior. *Id.* ¶ 22. Jeremy responded by telling Vega to stop complaining and to ignore Maurice. *Id.* ¶ 23. "Maurice's abusive behavior" continued, however, leading Vega to complain to Jeremy again. *Id.* ¶ 24.

Vega had another meeting with Jeremy, and Maurice joined this time. *Id.* ¶ 25. At the meeting, Maurice allegedly told Vega that he "would rather curse her out than punch her in the mouth." *Id.* Jeremy responded to this statement initially with silence, before assuring Vega that Maurice "doesn't mean it." *Id.* ¶ 26. Jeremy further instructed Vega to continue working and again told her to ignore Maurice. *Id.*

Vega alleges that Maurice's conduct toward her continued after this meeting. In July 2022, Maurice allegedly threw towels at Vega while she was working and screamed, "You're working too f\*\*king slow. I need this right f\*\*king now." *Id.* ¶ 28. Vega further contends that "Jeremy was present when Maurice physically and verbally abused [her] and stood in silence." *Id.* ¶ 29. Instead of taking action, Jeremy allegedly reiterated to Vega that Maurice does not mean it. *Id.* ¶ 30.

Vega additionally contends that Regent violated the NYLL during her employment. She alleges that, in April 2022, Regent began paying its employees on a bi-weekly, instead of weekly, basis. *Id.* ¶ 32. This practice continued until July 2022. *Id.* ¶ 33. Vega further contends that Regent failed to provide her and other employees with timely wage statements, also starting in April 2022. *Id.* ¶¶ 41, 78.

Because of Regent's failure to address "Maurice's abusive and discriminatory behavior," Vega felt that she had "no choice but to quit her job." *Id.* ¶ 31. Further, Regent's "actions and inactions" allegedly caused Vega to "suffer[] substantial damages including economic, physical, and emotional harm." *Id.* ¶ 34. Vega stopped working for Regent in July 2022. *Id.* ¶¶ 3, 45.

### B. Procedural History

On May 15, 2023, Vega filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). *Id.* ¶ 14. On January 25, 2024, the EEOC issued Vega a Dismissal and Notice of Right to Sue. *Id.* ¶ 15. On April 17, 2024, Vega timely commenced this action against Regent, alleging six causes of action. The First and Second Causes of Action allege a hostile work environment based on her sex in violation of Title VII and the NYSHRL, respectively. *Id.* ¶¶ 52-61. The Third and Fourth Causes of Action allege a constructive discharge in violation of Title VII and the NYSHRL, respectively. *Id.* ¶¶ 62-71. Vega's Fifth Cause of Action alleges, on behalf of herself and a putative class of Plaintiffs (the "Class Plaintiffs"), that Regent failed to timely pay wages in violation of NYLL Section 191. *Id.* ¶¶ 72-75. Finally, Vega's Sixth Cause of Action alleges, on behalf of herself and the Class Plaintiffs, that Regent failed to furnish proper wage statements in violation of NYLL Section 195(3). *Id.* ¶¶ 76-79.

On July 24, 2024, Regent filed an Answer to the Complaint, which asserted a Counterclaim of breach of loyalty and faithless servant. Dkt. 21. Vega answered the Counterclaim on August 14, 2024. Dkt. 23. The Court then entered a case management plan which commenced non-class discovery, with any schedule for class discovery to be set, if appropriate, after the Court resolves Regent's then-anticipated motion to dismiss. Dkt. 33.

On December 27, 2024, Regent filed the instant motion for judgment on the pleadings pursuant to Rule 12(c) and to dismiss pursuant to Rule 12(b)(1) and 28 U.S.C. § 1367. Dkt. 38. Vega opposed the motion on January 31, 2025, Dkt. 41 ("Opposition"), and Regent filed its reply on February 7, 2025, Dkt. 42 ("Reply").

## II. Legal Standard

### A. Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The party asserting subject matter jurisdiction carries the burden of establishing, by a preponderance of the evidence, that jurisdiction exists. *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Makarova*, 201 F.3d at 113). Challenges to a court's subject matter jurisdiction under Rule 12(b)(1) come in two forms: facial or factual. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56-57 (2d Cir. 2016). Where, as here, the Rule 12(b)(1) motion raises a facial challenge—that is, one "based solely on the allegations of the complaint or the complaint and exhibits attached to it"—a court's task "is to determine whether the Pleading alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Id.* at 56 (internal quotation marks and backets omitted). Although the plaintiff bears no evidentiary burden in refuting such a challenge, the burden of persuasion remains on the plaintiff, as the party invoking federal jurisdiction, to establish her standing as the proper party to bring this action. *See id.* In assessing whether the plaintiff has met this burden, the court refrains from "drawing from the pleadings inferences favorable to the party asserting [jurisdiction]." *APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003) (internal quotation marks omitted).

### B. Rule 12(c)

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for

5

failure to state a claim." *Hogan v. Fischer*, 738 F.3d 509, 514-15 (2d Cir. 2013) (quoting *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006)). Thus, to "survive a Rule 12(c) motion, [the] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010) (quoting *Johnson v. Rowley*, 569 F.3d 40, 44 (2d Cir. 2009) (per curiam)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although the Court must "accept[] as true the factual allegations in the complaint and draw[] all inferences in the plaintiff's favor," *Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015), it need not "accept as true legal conclusions couched as factual allegations," *Lafaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475-76 (2d Cir. 2009).

### III.  Discussion

**A. Supplemental Jurisdiction Over Vega's NYLL Section 191 and Section 195(3) Claims**

A district court with original jurisdiction over an action may exercise supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Claims form part of the same case or controversy when they derive from a "common nucleus of operative fact." *Montefiore Med. Ctr. v. Teamsters Loc. 272*, 642 F.3d 321, 332 (2d Cir. 2011) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)). Thus, in determining whether to exercise supplemental jurisdiction, courts "have traditionally asked whether the facts underlying the federal and state claims substantially

6

overlapped or the federal claim necessarily brought the facts underlying the state claim before the court." *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 335 (2d Cir. 2006) (internal quotation marks, brackets, and ellipsis omitted). The Court may not exercise supplemental jurisdiction "when the federal and state claims rest[] on essentially unrelated facts." *Lyndonville Sav. Bank & Tr. Co. v. Lussier*, 211 F.3d 697, 704 (2d Cir. 2000).

Regent moves to dismiss Vega's NYLL claims in the Fifth and Sixth Causes of Action because the "only discernible connection between [Vega's] NYLL wage claims and Title VII discrimination claims [is Vega's] employment with Regent." Dkt. 38-4 ("Motion") at 8 (internal quotation marks omitted). Regent maintains that this "bare link of employment relationship is insufficient to establish supplemental jurisdiction." *Id.* (internal quotation marks omitted). Vega responds by arguing that the facts underlying her "state law late payment claims substantially overlap[] with" the facts underlying her federal discrimination claim, and attempts to draw both a temporal and a causal connection between those claims. Opposition at 13. The Court agrees with Regent and declines to exercise supplemental jurisdiction over Vega's state wage-and-hour claims.

With respect to the "temporal proximity" of the events underlying Vega's federal discrimination claims and her state wage-and-hour claims, Vega contends in her opposition brief that, "immediately after" she opposed the alleged discrimination, Regent "stopped paying [Vega] and similarly situated coworkers on a weekly basis," and that it resumed paying its employees weekly "immediately *after* [Vega] resigned by way of a constructive discharge in July 2022." *Id.* Similarly, Vega alleges in her Complaint that Regent engaged in NYLL violations during the same period that it discriminated against her. Compl. at 5; *see also id.* ¶ 33 ("Specifically, for four (4) months, from on or about April of 2022 until the end of July 2022, Defendant unlawfully stopped

7

paying their employees each week."). And of course, Vega alleges that her Title VII claims and NYLL claims all arose during her employment with Regent. *See id.* ¶ 8.

While those "claims arise from the same employment relationship" and there is some degree of overlap in "the time frame of the events . . . with regard to all claims, those facts do not establish the common nucleus of operative fact necessary for supplemental jurisdiction." *Jenkins v. Yellowstone Props., Inc.*, No. 17 Civ. 7764 (VEC), 2019 WL 4392955, at *2 (S.D.N.Y. Sept. 12, 2019) (internal quotation marks omitted) (collecting cases); *see, e.g.*, *Thomas v. EONY LLC*, No. 13 Civ. 8512 (JPO), 2015 WL 1809085, at *5 (S.D.N.Y. Apr. 21, 2015) (explaining that "[d]istrict courts in this circuit have held that the fact of an employment relationship does not establish a common nucleus of operative fact where it is the sole fact that connects federal and nonfederal claims" (internal quotation marks omitted)). Disputes share a common nucleus of operative fact when "the evidence likely to be used in the specific case in addressing the federal claim is likely to substantially overlap with that used to address the state-law claims." *Benitez v. Valentino U.S.A., Inc.*, No. 19 Civ. 11463 (JGLC), 2024 WL 5145564, at *2 (S.D.N.Y. Dec. 17, 2024) (internal quotation marks omitted); *accord Achtman*, 464 F.3d at 335.

Here, the evidence that would support Vega's Title VII claims would not substantially overlap with the evidence needed for her NYLL claims. Vega's federal hostile work environment and constructive discharge claims concern Maurice's alleged treatment of her on the job and Regent's response to her complaints about that treatment. Meanwhile, Vega's state wage-and-hour claims concern only Regent's alleged failure to pay its employees on a weekly basis and to provide timely wage statements. A common employment relationship and a concurrence of events alleged, without further overlap in the alleged facts underlying the federal and state claims, do not constitute a common nucleus of operative fact required for supplemental jurisdiction.

In addition to her "temporal proximity" argument, Vega argues in her opposition brief that a causal overlap exists because "had [she] never mustered the courage to stand up against [Regent's] discrimination, [Regent] may well still have paid its staff on a weekly basis at all times." Opposition at 13. In other words, Vega seems to argue that Regent responded to her complaints about Maurice by unlawfully paying its employees on a bi-weekly basis. This argument fails to support the exercise of supplemental jurisdiction for two independent reasons.

First, and most fundamentally, this causal-relationship theory is nowhere to be found in the allegations of Vega's Complaint. When a defendant raises a facial Rule 12(b)(1) challenge, as Regent does here, the motion is assessed "based solely on the allegations of the complaint or the complaint and exhibits attached to it." *Nicholas v. Trump*, 433 F. Supp. 3d 581, 586 (S.D.N.Y. 2020) (quoting *Carter*, 822 F.3d at 56). Thus, to "resolve a facial Rule 12(b)(1) motion, a district court must determine whether the complaint and its exhibits allege facts that establish subject matter jurisdiction." *Thompson v. CRF-Cluster Model Program, LLC*, No. 19 Civ. 1360 (KPF), 2020 WL 4735300, at *4 (S.D.N.Y. Aug. 14, 2020) (internal quotation marks and brackets omitted). Vega's argument in her opposition brief that her federal discrimination and state wage-and-hour claims are "intricately connected" because "had [she] never mustered the courage to stand up against [Regent's] discrimination, [Regent] may well still have paid its staff on a weekly basis at all times," Opposition at 13, is not alleged in the Complaint, *see generally* Compl., and thus may not be considered in resolving Regent's Rule 12(b)(1) motion. For this reason alone, Vega's causal-connection argument fails.

Second, even if Vega's Complaint alleged such a causal-connection theory, she still would fall short of establishing a common nucleus of operative fact necessary for the exercise of supplemental jurisdiction. Vega is correct that facts may substantially overlap when a causal

9

relationship exists between a discrimination claim and wage-and-hour claim. *See, e.g.*, *Fernandez v. Namdar Realty Grp. LLC*, No. 20 Civ. 5649 (ERK), 2021 WL 4480537, at *2 (E.D.N.Y. Sept. 30, 2021) (explaining that the court may exercise supplemental jurisdiction when there is "some 'overlap' between the wage-and-hour claims and the alleged employment discrimination" (citation omitted)).  Courts have exercised supplemental jurisdiction when "the plaintiff's wages were decreased *because of* unlawful discrimination." *Id.* (citing *Dervisevic v. Wolfgang's Steakhouse, Inc.*, No. 19 Civ. 814 (VEC), 2019 WL 6251197, at *3 (S.D.N.Y. Nov. 22, 2019)); *see Munguia v. Bhuiyan*, No. 11 Civ. 3581 (JBW) (MDG), 2012 WL 526541, at *3 (E.D.N.Y. Feb. 16, 2012) (holding that the plaintiff's claims were "logically connected" because the "plaintiff has sufficiently alleged . . . that defendants decreased his wages as a result of unlawful [racial] discrimination" (internal quotation marks and brackets omitted)).

Vega's causal-connection theory, however, is a far cry from the sort of causal relationships that have been found sufficient to support the exercise of supplemental jurisdiction.  Indeed, any argument that Regent's decision to change the frequency it paid staff was "*because of* unlawful discrimination" is belied by Vega's own allegations.  Vega alleges that, starting in April 2022, Regent "subjected [its] workforce of well over 100 employees to unlawful wage practices." Compl. ¶ 5; *see id.* ¶¶ 32-33 (alleging that from April 2022 to July 2022, Regent "stopped paying their employees each week").  Vega therefore contends that Regent unlawfully paid its *entire workforce* on a bi-weekly basis, not that the company singled her out by imposing that pay schedule.  Because Vega does not allege facts to support a plausible inference that Regent's pay practices changed because of her complaints about Maurice's behavior or otherwise were the result of discrimination against her, Vega's attempts to draw a causal connection are unavailing.  *See Guerra v. Trece Corp.*, No. 18 Civ. 625 (ER), 2020 WL 7028955, at *7 (S.D.N.Y. Nov. 30, 2020)

(holding that the "facts alleged in support of [the plaintiff's] pregnancy discrimination claim do not substantially overlap with the facts supporting her FLSA and NYLL claims" because the plaintiff "never alleges that her rate of pay or the length of her typical shift changed *as a result of her pregnancy*" (emphasis added)).

"Because [Vega's] state and federal claims," as alleged in the Complaint, do not share a common nucleus of operative fact, the Court "lack[s] pendent jurisdiction to hear [Vega's] state law claims." *Lyndonville Sav. Bank & Tr.*, 211 F.3d at 705. The Court therefore grants Regent's motion to dismiss Vega's Fifth and Sixth Causes of Action pursuant to Rule 12(b)(1) and dismisses those claims without prejudice.[3]

### B. Title VII Claims

The Court turns next to Vega's claims under Title VII for hostile work environment based on sex and constructive discharge. Compl. ¶¶ 52-56, 62-66; *see also* Dkt. 36 (transcript of conference on December 3, 2024) at 4:5-6 (Vega's counsel explaining that "a hostile work environment is [Vega's] theory, culminating in a constructive discharge"). Regent seeks dismissal of those claims under Rule 12(c), arguing that Vega "failed to allege any facts . . . to support her hostile work environment and/or constructive discharge claims." Motion at 21-22. The Court agrees with Regent and dismisses Vega's First and Third Causes of Action.

#### 1.   Hostile Work Environment

In her First Cause of Action, Vega alleges a hostile work environment in violation of Title VII. Compl. ¶¶ 52-56. To state a claim for a hostile work environment under Title VII, "the

---

[3] In light of this holding, the Court does not reach Regent's alternative argument that the Court should not exercise supplemental jurisdiction over the putative class claims in the Fifth and Sixth Causes of Action because those claims would predominate over the federal claims. *See* Motion at 4-8, 9-10.

plaintiff 'must plead facts that would tend to show that the complained of conduct: (1) is objectively severe or pervasive—that is, . . . creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of'" the plaintiff's protected characteristic. *Everett v. New York City Dep't of Educ.*, No. 21 Civ. 7043 (JPC), 2022 WL 2342693, at *7 (S.D.N.Y. June 29, 2022) (ellipsis in original) (quoting *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007)).

A hostile work environment exists "[w]hen the workplace is permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment.'" *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993) (citation omitted); *accord Littlejohn v. City of New York*, 795 F.3d 297, 320-21 (2d Cir. 2015). To determine whether an environment is "hostile" or "abusive," a court considers "all the circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 23. A hostile work environment may result from "a single incident [that] was extraordinarily severe, or . . . a series of incidents [that] were sufficiently continuous and concerted to have altered the conditions of [the plaintiff's] working environment." *Alfano v. Costello*, 294 F.3d 365, 374 (2d Cir. 2002) (internal quotation marks omitted). But "[i]solated incidents or 'episodic' stray remarks are not 'sufficiently continuous and concerted in order to be deemed pervasive.'" *De Figueroa v. New York*, 403 F. Supp. 3d 133, 160-61 (E.D.N.Y. 2019) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003)).

Vega relies on four alleged incidents to advance her hostile work environment claim: (1) "Maurice openly called [Vega] a 'b***h' on the shop floor," Compl. ¶ 20; (2) "Maurice would scream 'f**k you' at [Vega] when she stood up for herself," *id.* ¶ 21; (3) during a meeting between Vega, Maurice, and Jeremy to discuss Maurice's behavior, Maurice told Vega that he "would rather curse her out than punch her in the mouth," *id.* ¶ 25 (internal quotation marks omitted); and (4) in July 2022, as "Vega was working diligently to complete towel service, Maurice began throwing towels at [Vega] and screamed, 'You're working too f**king slow. I need this right f**king now,'" *id.* ¶ 28.

To start, none of these alleged incidents, on its own, was so "extraordinarily severe," *Alfano*, 294 F.3d at 374, to support a hostile work environment claim. "[A] single act can create a hostile work environment if it in fact works a transformation of the plaintiff's workplace." *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 262 (2d Cir. 2023) (internal quotation marks omitted); *accord Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000), *superseded on other grounds by*, N.Y.C., N.Y., ADMIN. CODE L.L. 85 (2005). To determine if an "isolated incident" sufficiently transforms a plaintiff's workplace such that it creates a hostile work environment, "the test is whether the harassment is of such quality or quantity that a reasonable employee would find the conditions of her employment *altered for the worse*." *Terry*, 336 F.3d at 148 (internal quotation marks omitted); *see Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("We have made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment, and the Courts of Appeals have heeded this view."). For example, "even a single incident of sexual assault sufficiently alters the conditions of [a] victim's employment and clearly creates an abusive work environment under Title VII." *Richardson v. N.Y. State Dep't of Corr.*

13

*Serv.*, 180 F.3d 426, 437 (2d Cir. 1999) (internal quotation marks omitted), *abrogated on other grounds by, Burlington N. & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006).

None of Vega's four alleged incidents, fully credited for purposes of this motion and considered individually, was so extreme that it rises to this level. In fact, Vega alleges that "[a]t all relevant times, [she] executed her duties in an exemplary manner," Compl. ¶ 18, suggesting that Maurice's alleged conduct, while highly unprofessional, did not "so alter[] working conditions as to make it more difficult to do [her] job," *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 607 (2d Cir. 2006) (internal quotation marks omitted).

Nor do these alleged incidents, fully credited and "considered cumulatively," amount to a hostile work environment. *Schwapp v. Town of Avon*, 118 F.3d 106, 111 (2d Cir. 1997) (internal quotation marks omitted); *see* Compl. ¶¶ 19-21, 25, 28. "When harassment takes the form of offensive comments," as Maurice's alleged conduct primarily does here (with the exception being the alleged towel-throwing incident), "the existence of a hostile work environment typically depends upon the quantity, frequency, and severity of the verbal abuse." *Ancrum v. New York City Dep't of Env't Prot.*, No. 23 Civ. 10978 (JPC), 2024 WL 5009145, at *5 (S.D.N.Y. Dec. 6, 2024) (internal quotation marks omitted). But sporadic or isolated "episodes of name-calling, inappropriate behavior by a supervisor, and other perceived slights, . . . however regrettable, do not constitute a hostile work environment even if taken as true." *Augustin v. Yale Club of New York City*, 274 F. App'x 76, 77 (2d Cir. 2008), *aff'g*, No. 03 Civ. 1924 (KMK), 2006 WL 2690289 (S.D.N.Y. Sept. 15, 2006); *see Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 271 (2001) ("[A] recurring point in our opinions is that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." (internal quotation marks and brackets omitted)); *Fletcher v. ABM Bldg. Value*,

14

No. 14 Civ. 4712 (NRB), 2018 WL 1801310, at *23-24 (S.D.N.Y. Mar. 28, 2018) (explaining that "[c]ase law within this Circuit establishes that sporadic comments, slurs, and jokes" do not support "actionable claims for hostile work environment under [] Title VII").  Alternatively, "rude" and "demeaning" comments that occur "on a *daily* basis" may be sufficient to support a hostile work environment claim.  *Matthew v. Tex. Comptroller of Pub. Accts.*, No. 21 Civ. 5337 (JPC), 2022 WL 4626511, at *9 (S.D.N.Y. Sept. 30, 2022) (emphasis added); *see, e.g.*, *Feingold v. New York*, 366 F.3d 138, 150 (2d Cir. 2004) (finding sufficient evidence of "pervasive discriminatory intimidation, ridicule, and insult" when the plaintiff was "singled out . . . on an almost daily basis on account of his religion" (internal quotation marks omitted)); *Fairbrother v. Morrison*, 412 F.3d 39, 50 (2d Cir. 2005) (finding that a "jury could reasonably find such severe or pervasive workplace hostility" when for "a period of several months, [the plaintiff] was called 'bitch' almost daily, and called 'whore' ten to fifteen times"), *abrogated on other grounds by, Burlington N. & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006).

As alleged, three of Maurice's actions were one-off comments.  *See* Compl. ¶ 20 (Maurice "openly call[ing] [Vega] a 'b***h'"); *id.* ¶ 25 (Maurice telling Vega that he "would rather curse her out than punch her in the mouth" at a meeting with Jeremy); *id.* ¶ 28 (Maurice throwing a towel at Vega and screaming at her for working too slow).[4]  Such sporadic and isolated incidents do not support an actionable hostile work environment claim under Title VII.  *See Augustin*, 274 F. App'x at 77; *Fletcher*, 2018 WL 1801310, at *23-24.  As to the other alleged incident, Vega does not allege the frequency that Maurice "would scream 'f**k you'" at her or any circumstances concerning when this occurred other than after Vega "stood up for herself," presumably in March

---

[4] While not explicitly alleged in the Complaint, it appears that the first two incidents allegedly occurred in March 2022, and the third allegedly occurred in July 2022.

15

2022. Compl. ¶ 21; *see LaSalle v. City of New York*, No. 13 Civ. 5109 (PAC), 2015 WL 1442376, at *7 (S.D.N.Y. Mar. 30, 2015) (finding that the plaintiff "failed to plead facts from which the Court could determine that [her supervisor's] comments were sufficiently frequent, severe, or pervasive to constitute a hostile work environment," where she alleged that her supervisor "called her a 'bitch' as well as other derogatory and/or sexist names on an unspecified number of occasions," and that these "statements were 'habitual,' but d[id] not indicate even an approximate number of times that [the supervisor] made such statements" (internal quotation marks omitted)). In sum, these incidents, fully credited and considered in their totality, were not "'sufficiently continuous and concerted' to have altered the conditions of [Vega's] working environment." *Alfano*, 294 F.3d at 374 (quoting *Cruz*, 202 F.3d at 570); *see* Compl. ¶ 18 (alleging that "[a]t all relevant times, [Vega] executed her duties in an exemplary manner"); *see also Harris*, 510 U.S. at 21 (explaining that the "mere utterance of an . . . epithet which engenders offensive feelings in a[n] employee does not sufficiently affect the conditions of employment to implicate Title VII" (internal quotation marks omitted) (ellipses in original)).[5]

In addition, the conditions of Vega's work environment at Regent, as pleaded, were less severe than conditions that have been found insufficient to support a hostile work environment claim.[6] In *Anderson v. City of New York*, for example, a former New York City Fire Department

---

[5] While Vega also broadly alleges that she was "subjected to daily acts of gender discrimination and hostility," Compl. ¶ 19, she does not specify what conduct was directed at her on a "daily" basis. Without any specifics as to such "daily acts," including what occurred and who committed the acts, this allegation is too vague to support a cognizable hostile work environment claim under Title VII.

[6] Of course, as the Second Circuit has emphasized, "the appalling conduct alleged in prior cases should not be taken to mark the boundary of what is actionable." *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 70 (2d Cir. 2000) (internal quotation marks omitted); *see also Schiano*, 445 F.3d at 607 ("These determinations are to be made on a case by case basis considering all the individual facts at hand."). But conduct alleged in prior cases that did not rise to a level to

paramedic brought a Title VII hostile work environment claim against his former employer. 712 F. Supp. 3d 412, 421 (S.D.N.Y. 2024). The plaintiff alleged that her partner "subjected her to verbal abuse, harassment, and a campaign of intimidation, including throwing objects, slamming doors, and staring at her in common spaces." *Id.* at 430 (internal quotation marks omitted); *see id.* (explaining that the plaintiff contended this co-worker "harassed her due to her gender by shouting at her, throwing equipment, slamming doors, and blocking her in the office"). She also alleged that "two other employees harassed her several times as well." *Id.* The court found these allegations of harassment to be "not sufficiently severe or pervasive to constitute a hostile work environment," in part because the plaintiff "fail[ed] to allege that she felt physically threatened, the harassment interfered with her work, or that [her coworker's] behavior or statements were particularly obscene, profane, or offensive." *Id.* at 430-31. As a result, the court dismissed the plaintiff's hostile work environment claim. *Id.* at 431.

Similarly, in *Augustin v. Yale Club of New York City*, the plaintiff alleged that she "was the victim of a sexually and/or racially hostile work environment" while working on the Yale Club's wait staff. 2006 WL 2690289, at *1. Her hostile work environment claim relied on a number of alleged incidents, including co-workers calling the plaintiff a "meter maid," a "black bitch," a "bitch," an "animal," "garbage," and a "fucking [racist term]." *Id.* at *21. The plaintiff also alleged that her co-workers "told her to be quiet, and said she had no manners," and that she "received more work than her male counterparts," which she felt was "a result of her status as a black female." *Id.* The district court held that "the Yale Club's conduct, when viewed as a whole,

---

support a claim for a hostile work environment is instructive in evaluating Vega's allegations here. *See Lyu v. Alfa Chemistry Inc.*, No. 23 Civ. 7951 (EK), 2025 WL 1093134, at *8 (E.D.N.Y. Apr. 13, 2025); *Stinson v. Morningstar Credit Ratings, LLC*, No. 22 Civ. 6164 (JLR), 2024 WL 3848515, at *20 (S.D.N.Y. Aug. 16, 2024); *Doyle v. Am. Glory Rest. Corp.*, No. 23 Civ. 7624 (PAE), 2024 WL 1466161, at *6 (S.D.N.Y. Apr. 4, 2024).

17

cannot be characterized as sufficiently 'severe' or 'pervasive' to state a hostile work environment claim." *Id.* at *22. Affirming that result, the Second Circuit noted "[t]he worst of the allegations against the Club involve episodes of name-calling, inappropriate behavior by a supervisor, and other perceived slights, which, however regrettable, do not constitute a hostile work environment even if taken as true." *Augustin*, 274 F. App'x at 77; *see also, e.g.*, *Marquez v. City of New York*, No. 14 Civ. 8185 (AJN), 2016 WL 4767577, at *8 (S.D.N.Y. Sept. 12, 2016) (concluding that the alleged actions of the plaintiff's supervisor—including commenting that the plaintiff "did not need to lose weight and that he 'liked her the way she was' – 'nice and tight,'" "initiat[ing] conversations with . . . [the plaintiff] while 'partially undressed,'" and telling the plaintiff, "You're invited to the gun show, you want to feel it?"—were "insufficiently pervasive or severe to constitute [a] hostile environment").

In sum, while Maurice's conduct, as alleged, was regrettable, it did not rise to the level of severity that would support a hostile work environment claim under Title VII. Accordingly, the Court grants Regent's motion to dismiss Vega's First Cause of Action pursuant to Rule 12(c).

### 2. Constructive Discharge

Vega's Third Cause of Action alleges that she was constructively discharged in violation of Title VII. Compl. ¶¶ 62-66. When a constructive discharge claim is "an independent *claim* for relief," as it is here, it can be "categorized as a hostile-environment constructive discharge claim." *Noh v. Admarketplace, Inc.*, No. 24 Civ. 2107 (ER), 2025 WL 965882, at *5 (S.D.N.Y. Mar. 28, 2025) (internal quotation marks omitted). This type of claim "requires that a plaintiff sufficiently allege a hostile work environment in order to adequately allege a constructive discharge claim." *Id.* (internal quotation marks omitted). As such, the standard for establishing the constructive discharge claim "is higher than the standard for establishing a hostile work environment." *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 725 (2d Cir. 2010); *see Pryor v. Jaffe & Asher,*

*LLP*, 992 F. Supp. 2d 252, 262 (S.D.N.Y. 2014) (characterizing this standard as "demanding" (internal quotation marks omitted)). Given this heightened standard and Vega's failure to allege a Title VII hostile work environment claim, her claim of constructive discharge under Title VII likewise fails. *See Fincher*, 604 F.3d at 725. The Court therefore grants Regent's motion to dismiss Vega's Third Cause of Action pursuant to Rule 12(c).

### C. New York State Human Rights Law

The remaining claims are Vega's hostile work environment and constructive discharge claims under the NYSHRL in the Second and Fourth Causes of Action. Compl. ¶¶ 57-61, 67-71. The lone jurisdictional basis for these state-law claims is supplemental jurisdiction under 28 U.S.C. § 1367(a). A court's exercise of supplemental jurisdiction, however, is discretionary, and "[i]t is well settled that where . . . the federal claims are eliminated in the early stages of litigation, courts should generally decline to exercise pendent jurisdiction over remaining state law claims." *Klein & Co. Futures, Inc. v. Bd. of Trade of N.Y.*, 464 F.3d 255, 262 (2d Cir. 2006); *see* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."). Vega's federal causes of action have been dismissed for failure to state a claim, the litigation is still at its early stages, and no exceptional circumstances justify a departure from the principle that the dismissal of all federal causes of action from a complaint "will usually result in the dismissal of the state-law claims." *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 83 (2d Cir. 2018). Accordingly, the Court declines to exercise supplemental jurisdiction over Vega's NYSHRL claims and dismisses those claims without prejudice.

### D. Leave to Amend

Lastly, the Court considers whether to grant Vega leave to amend her Complaint. Under Rule 15(a) of the Federal Rules of Civil Procedure, a court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Vega asks the Court for leave to amend should the Court rule in Regent's favor. Opposition at 23-25. Because it is possible that further allegations could address the aforementioned pleading deficiencies of the Complaint, including by adding additional details as to actions directed to Vega while at Regent and the frequency of such actions, the Court grants Vega leave to amend. The Court emphasizes that Vega should file an amended complaint only if she believes she can remedy the pleading deficiencies identified herein.

## IV. Conclusion

For the foregoing reasons, Regent's motion is granted, and the Complaint is dismissed without prejudice. Any amended complaint is due within fourteen days of this Opinion and Order. Vega is cautioned that, absent a timely request for an extension, the failure to file an amended complaint by that deadline will result in the Court dismissing Vega's Title VII claims with prejudice. The Clerk of Court is respectfully directed to close Docket Number 38.

SO ORDERED.

Dated: September 15, 2025  
      New York, New York

                                        JOHN P. CRONAN  
                                    United States District Judge